UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

IN RE: Ignacio Mendiola,　　　　　　　　　　　　Case No. 17-23628-bhl
　　　　　　　　Debtor.　　　　　　　　　　　　　　Chapter 13

**DECISION**

　　　　This case involves the court's power to prevent a debtor's continuing abuse of the bankruptcy system. Ignacio Mendiola is a repeat filer. Over the last six years, he has filed six Chapter 13 bankruptcy petitions, either individually or jointly with his wife. All five prior cases were dismissed after the debtor failed to make plan payments or otherwise did not comply with his obligations under the Bankruptcy Code. When he again failed to make any payments in this latest case, U.S. Bank National Association, as Trustee for Citigroup Mortgage Loan Trust 2007-WFHE1, Asset-Backed Pass-Through Certificates, Series 2007-WFHE1, ("U.S. Bank") moved for relief from the automatic stay under 11 U.S.C. §362(d), and the Chapter 13 trustee moved to have the case dismissed under 11 U.S.C. §1307(c).

　　　　Both U.S. Bank and the Chapter 13 trustee contend the debtor's conduct in this case is so egregious that the court should grant extraordinary forms of relief. In addition to wanting the automatic stay lifted so it can continue foreclosure proceedings on a duplex owned by the debtor and his spouse, U.S. Bank asks the court to order "*in rem*" relief under 11 U.S.C. §362(d)(4), precluding the automatic stay from applying to the duplex in any bankruptcy cases filed within the next two years. Similarly, the Chapter 13 trustee seeks not only the dismissal of this case based on the debtor's failure to make payments, but also an order barring the debtor from refiling another bankruptcy petition for 180 days. Both U.S. Bank's and the Chapter 13 trustee's requests go beyond the relief typically granted when a debtor fails to make required payments under the code.

　　　　At a July 25, 2017 hearing, the court granted U.S. Bank's motion in part, lifting the stay as to the duplex in this case and taking under advisement the bank's request for section 362(d)(4)

*in rem* relief. After hearing testimony and further argument on August 22, 2017, the court granted the relief requested by both the bank and the Chapter 13 trustee. (*See* ECF Doc. 41, Order Granting U.S. Bank National Association's Motion for In Rem Relief From the Automatic Stay, entered 8/23/2017; and ECF Doc. 42, Order Granting Chapter 13 Trustee's Motion to Dismiss and Enjoin the Debtor From Filing Another Bankruptcy Case for a Period of 180 Days, entered 8/23/2017.) This decision supplements the court's earlier rulings.

## BACKGROUND

The debtor holds an interest in a duplex located at 918-920 South 14th Street in Sheboygan, Wisconsin. The property is not the debtor's homestead; it is an income-producing rental property. Depending on whether one believes the debtor's hearing testimony or the sworn statement in his Official Form 122C-1, the debtor and his wife receive either $950 or $1,100 each month in rents from the duplex's tenants. Either way, it is clear the property provides significant income that the debtor could use to fund a Chapter 13 plan. He has repeatedly chosen not to do so.

U.S. Bank is the current holder of a promissory note and mortgage on the duplex. The debtor's spouse signed the original note and mortgage on October 18, 2006. The original loan amount was $31,500, and it appears the debtor and his spouse made payments during the first several years of the note. Beginning in 2011, however, the debtor and his wife embarked on a course of conduct through which they filed repeated bankruptcy petitions, forestalling U.S. Bank's efforts to collect on the note, while collecting significant rental income, precious little of which found its way to U.S. Bank. At the same time, U.S. Bank incurred additional costs to protect its mortgage interest, paying real estate taxes and insurance costs on the duplex property. As a result, today, nearly 11 years after the loan originated, the unpaid principal balance on the note is $28,563.22, with additional interest, fees, costs and escrow deficiencies bringing the total debt owed U.S. Bank to $42,971.40. As the debt was increasing, the debtor and his spouse collected more than $120,000 in rental income from the property. According to the debtor's schedules, the duplex is worth $40,700, slightly less than the amount the debtors owe the bank.

The debtor filed his *first* Chapter 13 bankruptcy petition, jointly with his spouse, on June 6, 2011. His bankruptcy schedules listed the duplex as a non-homestead, income-producing property, generating $1,000 each month in rental income. Even with this rental income, the debtor and his spouse made no post-petition mortgage payments to U.S. Bank. Less than five months after the case began, the bank moved for and received relief from the automatic stay, giving it the ability to pursue state court remedies with respect to the duplex. At about the same time, on November 28, 2011, the bankruptcy court dismissed the entire case based on the debtor's failure to make other required payments.

With the stay lifted and the bankruptcy case dismissed, on January 6, 2012, U.S. Bank filed a foreclosure lawsuit. That lawsuit had not proceeded far, when, on February 17, 2012, the debtor and his spouse filed a *second* Chapter 13 petition, successfully halting the bank's foreclosure efforts. Having still not received mortgage payments for months, U.S. Bank moved for relief from stay again. In response, the debtor urged the bankruptcy court to keep the stay in place, claiming he failed to pay the bank because he misunderstood whether he or the trustee was supposed to disburse the payments. The court denied U.S. Bank's motion, but subjected the debtor to a six-month "doomsday order," under which U.S. Bank could obtain relief from the stay if the debtor missed any of his next six monthly mortgage payments. By August of 2012, the Chapter 13 trustee was already seeking dismissal of the debtor's bankruptcy case, this time based on the debtor's failure to file his tax returns as required by 11 U.S.C. §1308. The court granted the trustee's motion, dismissing the *second* case on September 24, 2012.

With the debtor's *second* bankruptcy case dismissed, U.S. Bank tried to resume its foreclosure action, then still pending in state court. But on November 12, 2012, the debtor thwarted the bank's efforts by filing his *third* Chapter 13 petition, this one again filed jointly with his spouse. Of the debtor's bankruptcy cases, this effort lasted the longest, and the debtor made some mortgage payments to U.S. Bank. On July 8, 2014, the bankruptcy court dismissed the debtor's *third* case after the debtor violated a court order requiring him to remit half of his 2012 tax refund to the Chapter 13 trustee for distribution to creditors.

By this time, the state court had dismissed U.S. Bank's first foreclosure action, requiring the bank to file a new foreclosure lawsuit, which it did on November 26, 2014. The new foreclosure filing prompted the debtor to file his *fourth* Chapter 13 petition on February 17, 2015. This *fourth* bankruptcy case lasted less than a year, ending when the debtor failed to make required payments, and the court, on October 5, 2015, dismissed that case too. Unlike his prior petitions, the debtor filed this *fourth* bankruptcy case, and all subsequent cases, individually and was not joined by his spouse.

After the dismissal of the debtor's *fourth* bankruptcy case, U.S. Bank finally got as far as obtaining a default judgment of foreclosure from the state court. Before the bank could take action on that judgment, however, the debtor filed his *fifth* Chapter 13 petition on January 13, 2016, a filing that appears to have successfully caused the state court to vacate the default judgment. It is otherwise hard to characterize the debtor's *fifth* bankruptcy as a "success." On December 22, 2016, the bankruptcy court dismissed that case too, after the debtor again failed to make required payments.

With the *fifth* bankruptcy ended, U.S. Bank started its third foreclosure action on February 9, 2017. Shortly thereafter, the debtor filed his *sixth* Chapter 13 petition on April 19, 2017. In this latest case, the provisions of 11 U.S.C. §362(c)(3)(B) would have caused the automatic stay to expire as a matter of law thirty days after the debtor filed his bankruptcy petition. To avoid this, the debtor filed a timely motion to continue the stay, a motion that neither U.S. Bank nor any other creditor opposed. The court required the debtor to testify at a May 16, 2017 hearing, and while ordering the stay continued, specifically cautioned the debtor on the importance of complying with the terms of his plan, the requirements of Chapter 13, and all other obligations under the Bankruptcy Code. Notwithstanding the court's warning, the debtor has not complied with his post-petition obligations to U.S. Bank or with his bankruptcy obligations in general. The debtor has made no post-petition mortgage payments to U.S. Bank or to the Chapter 13 trustee, leading to the bank's motion for relief from the stay and the trustee's motion to dismiss.

# ANALYSIS

Both U.S. Bank and the Chapter 13 trustee contend that the debtor's history of repeated filings warrants the ordering of extraordinary remedies to protect the bankruptcy system from abuse. U.S. Bank invokes the court's power to grant *in rem* relief from the automatic stay under 11 U.S.C. §362(d)(4). The Chapter 13 trustee asks the court to dismiss this latest case under 11 U.S.C. §1307(c) and to order a 180-day ban on the debtor filing another bankruptcy petition under 11 U.S.C. §§105(a) and 349(a). Because the record establishes that this case presents particularly egregious circumstances, the court will grant both requests.

### A. The Court's Power to Grant *In Rem* Relief under Section 362(d)(4).

Under 11 U.S.C. §362(a), the filing of a bankruptcy petition results in an automatic stay barring creditors from proceeding with most collections efforts. A creditor who wishes to continue a collections action can ask the bankruptcy court for an order under section 362(d)(1) "terminating, annulling, modifying, or conditioning" the stay if the creditor can establish "cause." U.S. Bank has done so here. It has shown that the debtor failed to make any post-petition payments to U.S. Bank under the terms of the note secured by the duplex. The court agrees that this failure constitutes cause sufficient to terminate the automatic stay with respect to the duplex. *See In re Borm*, 508 B.R. 104 (B.A.P. 8th Cir. 2014) (holding bankruptcy court abused its discretion in denying motion for relief from stay where debtors admittedly failed to make post-confirmation mortgage payments); *In re Lopez*, 446 B.R. 12 (Bankr. D. Mass. 2011) (concluding "cause" existed for lifting stay where debtor was three months in arrears on his postpetition mortgage payments and had no equity in property).

U.S. Bank seeks additional *in rem* relief under 11 U.S.C. §362(d)(4). This subsection empowers the court to provide additional relief in circumstances where an ordinary order granting relief from the automatic stay will be ineffective to protect the secured creditor's rights. 9B Am. Jur. 2d *Bankruptcy* §1849 (2017). An order granting relief under section 362(d)(4), if properly recorded under state law, remains "binding" on the property in any future bankruptcy case filed in the next two years. Thus, the automatic stay remains lifted as to the real property

subject to the order, even if the debtor files further bankruptcy petitions. 11 U.S.C. §362(d)(4). To obtain a new stay of collections proceedings, the debtor must affirmatively seek court relief from the *in rem* order in the later case.

Relief under section 362(d)(4) is an extraordinary remedy that is available only in limited situations. First, the creditor seeking relief must have a claim secured by an interest in real property. Second, the debtor's bankruptcy petition must have been "part of a scheme to delay, hinder, or defraud creditors." Third, the scheme must have been one involving either "(A) transfer of all or part ownership of, or other interest in, [the] real property without the consent of the secured creditor or court approval; or (B) multiple bankruptcy filings affecting such real property." 11 U.S.C. §362(d)(4).

U.S. Bank readily satisfies the first and third conditions. It is a secured creditor with a claim secured by real property – the debtor's duplex. And, as the background section of this decision details, the debtor has a long history of multiple bankruptcy filings affecting the duplex. The more complicated question is whether the debtor's bankruptcy filing is part of a "scheme to delay, hinder, or defraud creditors."

U.S. Bank's burden in establishing a "scheme" under section 362(d)(4) was clarified in 2010, when Congress amended the statute to make the terms "delay," "hinder," and "defraud" disjunctive. The amendment made clear that to warrant *in rem* relief, a creditor need only show a scheme to delay, *or* to hinder, *or* to defraud – the creditor need not prove all three. *In re Spencer*, 531 B.R. 208, 217 (Bankr. W.D. Wis. 2015).

The debtor argues there is no proof that his bankruptcy filing was part of a scheme. Instead, he maintains, the record simply shows a series of repeated filings and "screw-ups" on his part as he stumbled along without an intent to delay, hinder or defraud creditors. The evidence shows otherwise.

The number and timing of the debtor's Chapter 13 petitions compels the conclusion that the debtor's bankruptcy petition was part of a scheme as that term is used in section 362(d)(4). The debtor has now filed *six* Chapter 13 petitions since June of 2011. The timing of the filings

and dismissals of those cases over the past six years shows a scheme to delay and hinder U.S. Bank. After his *first* bankruptcy was dismissed, U.S. Bank began its first foreclosure action, only to have its effort thwarted when, just one month later, the debtor filed his *second* bankruptcy petition. When that *second* bankruptcy case was dismissed, and U.S. Bank tried to proceed with its foreclosure action, the debtor filed a *third* bankruptcy petition just two months later. When the *third* bankruptcy case was dismissed, and U.S. Bank filed a new foreclosure action, the debtor filed his *fourth* bankruptcy case. When the *fourth* bankruptcy case was dismissed, and U.S. Bank finally obtained a default judgment of foreclosure, the debtor filed his *fifth* bankruptcy case. And, when the *fifth* bankruptcy case was dismissed, and U.S. Bank filed its third foreclosure action, the debtor filed this, his *sixth* bankruptcy case. This pattern suggests something beyond mere inadvertence, as the debtor suggests; it is evidence of a scheme to delay and hinder the bank.

The court is mindful that repeated filings on the brink of a creditor's collections efforts are not necessarily dispositive. The Code does not prohibit a debtor from filing multiple bankruptcy petitions. And, it is often the case that a debtor resorts to bankruptcy only when forced to do so by a creditor's impending collections efforts. A court should not presume that a debtor is acting in bad faith or that a second or even a third successive filing is necessarily part of a "scheme." *See In re Danley*, 540 B.R. 468, 476 (Bankr. M.D. Ala. 2015). But here the record contains additional facts that refute the debtor's contention that he was acting innocently.

First, the number and pattern of Chapter 13 filings is significant. This case is not the second or third bankruptcy case that the debtor filed to stop a creditor's collections efforts. It is the *sixth* case in just *six* years, and the debtor timed all of the filings to thwart U.S. Bank's efforts to collect on its note and foreclose on the duplex. The greater the number of filings that fit this pattern, the more things look like a scheme.

Second, the record shows a lack of any serious effort by the debtor to see his cases through to completion. All of his Chapter 13 cases have been of limited duration. Four of the six cases, including this latest case, were dismissed within eight months of being filed. Most of

the dismissals resulted from the debtor's failure to make required payments. That the debtor repeatedly filed and then repeatedly failed to make payments, allowing his cases to be dismissed, only to file again, supports a finding that his petition was part of a scheme to delay or hinder U.S. Bank.

Third, the property that is the subject of the motion for *in rem* relief is a non-homestead rental property. During the six-year period since his first bankruptcy filing, the debtor and his spouse collected thousands of dollars of rental income each year from the duplex. The debtor could have used that income to pay U.S. Bank or fund his Chapter 13 plans. But he chose not to do so. Instead, the debtor misused the bankruptcy system so that he could retain a non-homestead property, and the substantial rental income that it generated, without having to pay U.S. Bank, the creditor that provided the funds with which the income-producing property was purchased to begin with. If this is not a scheme to defraud U.S. Bank, it certainly comes close. And, even if it is not a scheme to defraud, it is plainly a scheme to hinder or delay the bank.

Section 362(d)(4) allows the court to provide relief that will prevent this scheme from continuing. The court's order will apply to all parties having an interest in the subject real property, including subsequent ownership interests. *See In re Alakozai*, 499 B.R. 698, 704-05 (B.A.P. 9th Cir. 2013). While the debtor filed some of his prior bankruptcy petitions jointly with his wife, who also has an interest in the duplex, he filed this one individually. The debtor offered no explanation for the different bases for his filings. U.S. Bank points out that because this latest case was not filed jointly, even if the court were to grant relief from the stay to U.S. Bank and grant the Chapter 13 trustee's motion to dismiss with a 180-day refiling bar (more on that below), U.S. Bank would remain at risk that a new foreclosure proceeding would be derailed by a new bankruptcy filing by the debtor's spouse. By ordering *in rem* relief, the court ensures that the game of hindrance and delay will end.

    **B.**    **The Court's Power to Dismiss a Case and Prohibit Refiling.**

Bankruptcy Code section 1307(c) permits a bankruptcy court to dismiss a Chapter 13 case for "cause," including the "failure to commence making timely payments under section

1326 of this title." 11 U.S.C. §1307(c)(4). Here, the debtor failed to begin making plan payments within 30 days after the petition was filed. The debtor also failed to make regular plan payments thereafter. Both failures violate 11 U.S.C. §1326 and plainly constitute "cause" for dismissal under 11 U.S.C. §1307(c). The court thus grants that portion of the trustee's motion.

The trustee asks the court to go further and to enjoin "the debtor from filing another bankruptcy case in this district or any other district, without leave of this court for a period of 180 days." This additional request for relief necessitates a more robust analysis.

Generally, the dismissal of a debtor's bankruptcy case does not "prejudice the debtor with regard to the filing of a subsequent petition." 11 U.S.C. §349(a). The statute qualifies this general rule, allowing the court to order otherwise "for cause." While "cause" is not defined, the statute provides guidance. Section 349(a) refers to section 109(g), for example. Section 109(g) provides for a 180-day bar against refiling in two situations: (1) where a dismissal results from the debtor's willful failure to abide by court orders or to appear before the court; or (2) where "the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title." 11 U.S.C. §109(g).

While neither subsection is directly applicable – the current dismissal is for failure to make plan payments, not violations of court orders or failure to appear at a hearing, and the dismissal is on motion from the Chapter 13 trustee, not a voluntary request from the debtor in the face of a motion for relief from stay – both subsections are instructive. They demonstrate a desire to prevent debtors from disrespecting or abusing the bankruptcy system and give the court discretion, in those settings, to hold that a debtor has forfeited the right to file another bankruptcy petition for six months *or even longer*.[1] Bankruptcy courts are not powerless to stop such

---

1 *See, e.g., In re Dempsey*, 247 Fed. Appx. 21 (7th Cir. 2007) (holding that the bankruptcy court had authority to bar refiling for one year pursuant to sections 109(g) and 105(a)); *In re Casse*, 198 F.3d 327, 337-38 (2d Cir. 1999) ("Indeed, in all circuits but the Tenth, bankruptcy courts and district courts invariably derive from § 105(a) or § 349(a) of the Code, or from both sections in some cases, the power to sanction bad-faith serial filers [. . .] by

abuses, even if they do not fall directly within the instances set forth in section 109(g). Indeed, section 105(a) specifically gives the court general equitable powers to take actions "necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. §105(a).

The court agrees with the Chapter 13 trustee that the circumstances of this case show an abuse of the system, warranting departure from the ordinarily non-prejudicial nature of a dismissal order. The debtor is a serial filer who has repeatedly sought the protections of bankruptcy in an effort to thwart the foreclosure efforts of U.S. Bank. Along with repeatedly defaulting on the terms of his mortgage, the debtor has failed to make plan payments for a sustained period in any of his five previous cases. *See In re Grischkan*, 320 B.R. 654 (Bankr. N.D. Ohio 2005) (barring repeat debtor from re-filing a case for 180 days based on debtor's repeated failure to fund plans while the cases were pending). The debtor presented no credible evidence to rebut or explain any of the abuses evident by the chronology. The court will therefore impose a 180-day ban on re-filing.

Separate orders consistent with this decision have been entered.

Dated September 15, 2017

Brett H. Ludwig
United States Bankruptcy Judge

---

prohibiting further bankruptcy filings for longer periods of time than the 180 days specified by § 109(g)."); *In re Gonzalez–Ruiz,* 341 B.R. 371, 386 (B.A.P. 1st Cir. 2006) ("[T]he better reasoned approach is that articulated by the many courts which have ruled that the bankruptcy court has the power in an appropriate case to prohibit a serial filer from filing petitions for reasons other than lack of eligibility under § 109(g) and for periods of time exceeding 180 days"); *In re Garcia*, 479 B.R. 488 (Bankr. N.D. Ind. 2012) (applying a three-year ban).